# Exhibit B

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| COIN CENTER; PATRICK O'SULLIVAN; JOHN DOE; and DAVID HOFFMAN,<br><br>    Plaintiffs,<br><br>v.<br><br>JANET YELLEN, in her official capacity as Secretary of the Treasury; DEPARTMENT OF THE TREASURY; ANDREA M. GACKI, in her official capacity as Director of the Office of Foreign Assets Control; and OFFICE OF FOREIGN ASSETS CONTROL,<br><br>    Defendants. | Case No.<br>3:22-cv-20375-TKW-ZCB |

## DECLARATION OF JOHN DOE

I, John Doe, in accordance with 28 U.S.C. § 1746, declare as follows:

1. I am over eighteen years old and competent to sign this declaration. These statements are based on my personal knowledge.

2. I live in Georgia and am a human-rights advocate.

3. I am an American citizen.

4. I am proceeding pseudonymously because I believe that, if my identity is exposed, Russian agents will learn about my role in pro-Ukranian activities and could harm me and my family.

5. After Russia invaded Ukraine, I began providing and coordinating support for Ukrainians under attack. Since April 2022, I supported Ukrainians personally and facilitated sizable crypto donations from other donors. I and my donors call ourselves the 688th Support Brigade.

6. I made and facilitated sizable donations that went to supporting the most urgent needs of Ukranians at war. My efforts have paid for gloves, shoes, helmets, drones, and vehicles to assist Ukrainian frontline efforts.

7. Crypto donations to Ukraine have made a substantial positive impact.

8. I and the donors I help came to the mutual agreement that donating to Ukrainians could jeopardize our and our families' safety. Without privacy protections, Russian agents and Russian-funded hackers could identify and retaliate against donors like us for providing frontline aid. If our identities were revealed, our lives could be in danger when we travel abroad and we could be targeted by hackers. We want to

support Ukraine without fear of being harmed. We also value making contributions privately.

9. Every single donor has used the "Tornado Cash" tool, or the core software tool at issue in this case, to achieve that privacy. Under my direction, a donor will move her crypto asset to a tool address, then later withdraw it from that address to an account controlled exclusively by me for the provision of aid. From that latter account, I can send the assets to recipients who purchase the aid for Ukraine. An outside observer cannot tell whose assets are being sent to the latter account because they all come through an address with this privacy tool.

10. I myself have contributed to these efforts using the software tool. I have deposited assets from a personal address to a tool address, and then withdrawn those assets from that address to my address that I use exclusively for the provision of aid.

11. As a result of Defendants' criminalization, our donations have stopped. I am not comfortable facilitating donations without the protection of the tool. I am not confident that any alternative methods will provide a sufficient level of privacy or security.

12. We now no longer donate to the cause we wish to support.

13. If not for the criminalization of the tool, I and my donors would have continued to use it and to provide aid. We do not need to use registered relayers and would not use them. Instead, we would deposit funds from our more public addresses and then withdraw them to a pre-funded address. In cases where a donor would like a

new pre-funded address, I would send a small amount of funds to a donor's new and private address from the donation address I control. After the donor withdraws their funds to that address, the donor would complete the donation by sending the funds to the donation address I control. As in the past, I would then direct the aid from that account to recipients who can purchase goods for Ukraine.

14. Throughout the entirety of these transactions, nothing would be sent to a registered relayer, software writer, or DAO member. The only payment that we would make would be the standard Ethereum transaction fee associated with any transaction.

15. Because of Defendants' criminalization, we are prohibited from undertaking our planned course of activity and from contributing, in privacy, to the causes that we believe in.

16. I declare under penalty of perjury that the foregoing is true and correct.

Executed May 25, 2023 in Georgia.

*John Doe*
_____
John Doe